IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT VALLADON, et al., | No. C 06-07478 SI |
| Plaintiffs, | **ORDER DENYING MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| CITY OF OAKLAND, | |
| Defendant. | |

On August 21, 2009, the Court heard oral argument on defendant's motion for partial summary judgment on subgroups (1) B and E-2, (2) F and G, (3) C and E-3, and (4) D and E-4; and the parties' cross-motions for partial summary judgment on subgroups N, O, and P. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court DENIES all motions.

**BACKGROUND**

Plaintiffs are approximately 560 police officers who are or were employed by the City of Oakland ("Oakland"). Plaintiffs assert a series of claims (subgroups A-Q) under the Fair Labor Standards Act ("FLSA"). Pursuant to a stipulation by the parties, the Court entered an order on March 11, 2008 conditionally certifying this matter as a collective action and specifying that the deposition testimony of randomly selected representatives from each subgroup would be binding on every officer in that subgroup. *See* Docket No. 74. Now before the Court are Oakland's motions for partial summary

judgment on subgroups B and E-2,[1] C and E-3, D and E-4, and F and G; and the parties' cross-motions for partial summary judgment on subgroups N, O, and P.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

---

[1] The "E" subgroups consist of motorcycle officers, i.e. "officers who ride a motorcycle in the performance of their work." Docket No. 73 at 3.

**DISCUSSION**

**1.     Subgroups N, O, P**

Subgroups N, O, and P consist of sergeants (N), lieutenants (O), and captains (P) who claim that Oakland violated the FLSA by improperly classifying these employees as "exempt" from the FLSA's overtime requirements.

In general, the FLSA requires employers to compensate employees at a rate of one and one-half times their regular rate for each hour they work in excess of forty hours a week. 29 U.S.C. § 207(a)(1). Certain types of employees are exempt from the FLSA's overtime wage requirements. "An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983). At issue here is the "executive exception," set forth in § 213(a) of the FLSA. Section 213(a)(1) provides that the FLSA's overtime provision does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity[.]" 29 U.S.C. § 213(a)(1).

Plaintiffs argue that they are entitled to summary judgment on their claim that Oakland improperly applied the executive exemption to sergeants, lieutenants, and captains. According to plaintiffs, these employees are not paid on a salary basis because (1) their pay is subject to reduction for the quantity of work they perform and (2) their pay is subject to reduction for disciplinary reasons. The Court finds that there are disputed issues on both of these points and denies plaintiffs' motion on this issue.

Oakland also argues that it is entitled to summary judgment on its claim that the employees in subgroups N, O, and P qualify for the executive exemption. According to Oakland, there are no triable issues on (1) whether plaintiffs in these subgroups are compensated on a salary basis of not less than $455 per week, (2) whether plaintiffs have a primary duty of management, (3) whether plaintiffs customarily direct the work of two or more other employees, and (4) whether plaintiffs have authority to hire and fire other employees. The foregoing conclusion that there are disputed facts on whether these employees are paid on a salary basis precludes the Court from granting partial summary judgment

3

to Oakland on any of these issues.[2] Accordingly, the Court denies Oakland's motion.

**2.     Remaining Motions**

Oakland's four other partial summary judgment motions are also before the Court. They concern claims that Oakland failed to pay plaintiffs for time they spent cleaning and maintaining their uniforms and equipment (subgroups B and E-2), maintaining vehicles owned by Oakland (subgroups C and E-3), enforcing traffic laws (subgroups D and E-4), performing supervisory duties (subgroup F), and working before and after their shifts (subgroup G). In support of each of its four motions, Oakland argues that (1) even if this work is compensable, Oakland cannot be liable for failing to pay for time spent on these tasks because Oakland officials were not aware plaintiffs were performing this work and plaintiffs violated Oakland's policy requiring all off-the-clock work to be reported and (2) plaintiffs' claimed damages are too speculative. The Court will address both of these arguments.

**A.     There are disputed facts as to whether Oakland suffered or permitted plaintiffs to engage in off-the-clock work**

An employer must pay overtime when it "suffers" or "permits" an employee to work in excess of 40 hours a week. *Lindow v. United States*, 738 F.2d 1057, 1060 (9th Cir. 1984) (citing 29 U.S.C. § 203(g)). The Ninth Circuit has interpreted the words "suffer" or "permit" to mean "with the knowledge of the employer." *Id.* (citing *Fox v. Summit King Mines*, 143 F.2d 926, 932 (9th Cir. 1944)). "'[A]n employer who knows or should have known that an employee is or was working overtime' is obligated to pay overtime. 'An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.'" *Id.* at 1060-61 (citing *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)). An employer need not have actual knowledge that the employee is working overtime; constructive knowledge will suffice. *Holzapfel v. Town of Newburgh,*

---

[2] At oral argument, counsel for Oakland urged the Court to focus on whether lieutenants and captains qualify for the executive exemption. While the Court finds that there is force to Oakland's argument with respect to these categories of employees, the Court cannot reach this issue without deciding that there is no genuine factual dispute as to whether these plaintiffs are compensated on a salary basis.

4

*N.Y.*, 145 F.3d 516, 524 (2d Cir. 1998). DOL regulations provide that management has a duty to prevent employees from working overtime:

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785. 13; *see also U.S. Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 779 (6th Cir. 1995) ("[I]t is the responsibility of management to see that work is not performed if it does not want it to be performed.").

In this case, Oakland claims that it had no knowledge that plaintiffs were engaging in these activities and that Oakland cannot be liable for work performed in violation of its policy requiring that all overtime be reported. The Court finds that Oakland is not entitled to summary judgment on this issue because there are disputed facts about whether officials had actual or constructive knowledge that plaintiffs performed these tasks. There are also disputed facts about whether Oakland enforced the policy enunciated in General Order D-1 requiring advance authorization for overtime work and whether there was an unwritten but enforced policy requiring employees to perform work off-the-clock without seeking overtime compensation.

### B. Oakland has not demonstrated that plaintiffs' damages are so speculative as to bar recovery

Oakland argues that because plaintiffs did not keep track of the time they spent performing the activities at issue in this case, they will not be able to prove the amount and extent of overtime they are owed. According to Oakland, the City is entitled to summary judgment on the independent basis that plaintiffs' damages are speculative.[3]

Courts use a burden-shifting framework to determine damages in FLSA cases. "An employee seeking to recover unpaid minimum wages or overtime under the FLSA 'has the burden of proving that he performed work for which he was not properly compensated.'" *Brock v. Seto*, 790 F.2d 1446, 1447-

---

[3] Oakland also argues that any fault for incomplete records lies with plaintiffs because they failed to submit requests for overtime payment, as required by Department policy. This argument is more relevant to whether Oakland suffered or permitted plaintiffs to work overtime.

5

78 (9th Cir. 1986) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). "Once an employee establishes that the employer did not record the employee's overtime hours,[4] 'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work *as a matter of a just and reasonable inference*.'" *Brock*, 790 F.2d at 1448 (citing *Mt. Clemens Pottery*, 328 U.S. at 687) (emphasis added in *Brock*). The burden then shifts to the employer to show the precise number of hours worked or to present sufficient evidence to negate the "reasonableness of the inference to be drawn from the employee's evidence." *Id.* "Thus, unless the employer can provide accurate estimates of hours worked, it is the duty of the trier of fact to draw whatever reasonable inferences can be drawn from the employee's evidence." *Nash v. Res., Inc.*, 982 F. Supp. 1427, 1435 (D. Or. 1997) (citing *Brock*, 790 F.2d at 1448)).

As discussed in the foregoing section, there are disputed issues of fact as to whether plaintiffs performed overtime work for which they were not compensated. If plaintiffs prevail on this issue at trial, they need only present evidence from which a factfinder could reasonably approximate the amount and extent of work plaintiffs performed. Plaintiffs have provided estimates of the time they spent performing the activities at issue in this case through verified interrogatory responses and deposition testimony. The Court finds that this evidence is a sufficient basis for a jury to draw reasonable inferences about the amount of work plaintiffs performed. Accordingly, the Court finds that Oakland has not demonstrated that plaintiffs will not be able to prove damages at trial and denies Oakland's motion on this issue.

### C. Specific subgroup issues

Oakland also argues that the activities at issue in certain subgroups are not compensable as a matter of law. The FLSA requires employers to pay employees for all hours worked. "Work is the 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and

---

[4] The FLSA requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records" for specified periods of time. 29 U.S.C. § 211(c).

6

pursued necessarily and primarily for the benefit of the employer.'" *Lemmon v. City of San Leandro*, 538 F. Supp. 2d 1200, 1203 (N.D. Cal. 2007) (Patel, J.) (citing *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). The Portal-to-Portal Act of 1947 amended the FLSA to exclude the following activities from "working" time:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
> which occur prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). Preliminary and postliminary activities "remain compensable so long as 'those activities are an integral and indispensable part of the principal activities.'" *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004) (quoting *Mitchell v. King Packing Co.*, 350 U.S. 260, 262-63 (1956)). The Court will address Oakland's arguments with regard to specific subgroups.

### i. Subgroups C and E-3

Plaintiffs in subgroup C were assigned cars that were owned by Oakland and that plaintiffs were permitted to take home. Plaintiffs contend that they have not been properly compensated for the time they spent washing and maintaining the cars and driving the vehicles to a mechanic. Subgroup E-3 consists of motorcycle officers who claim that they have not been properly compensated for time they spent cleaning, maintaining, and training with their motorcycles.

Oakland claims that under the following provision of the FLSA, the activities described by plaintiffs are not compensable work:

> [T]he use of an employer's vehicle for travel by an employee and activities performed by an employee *which are incidental to the use of such vehicle for commuting* shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a) (emphasis added).

Oakland relies on *Aiken v. City of Memphis*, 190 F.3d 753, 759 (6th Cir. 1999), which held that because "keeping vehicles clean and scheduling maintenance to be done at the city's expense are hardly

7

arduous," these activities were "incidental" to the use of police department vehicles for commuting. According to Oakland, *Aiken* establishes that time spent cleaning and maintaining the vehicles that police officers use for their commutes is incidental to the commute as a matter of law.

The Court disagrees. In *Aiken*, these tasks were "hardly arduous." 190 F.3d at 759. The district court in *Aiken* found that the plaintiffs were required only to schedule maintenance on the vehicles and that the plaintiffs had submitted no evidence that "requiring the officers to maintain their vehicles in a clean condition is other than a minor task." *Aiken v. City of Memphis*, 985 F. Supp. 740, 744-45 (W.D. Tenn. 1997). *Aiken* does not establish that these activities are incidental even when officers are required to expend considerable effort on them. In this case, there are disputed facts about the amount of time officers are required to spend cleaning and maintaining the vehicles they use for their commutes and whether officers are required to maintain clean vehicles. Accordingly, the Court denies Oakland's motion for summary judgment on this issue.

### ii.     Subgroups D and E-4

The plaintiffs in subgroup D claim that they should be compensated for the time they spent engaging in traffic enforcement activities (e.g. issuing speeding tickets) during their commutes to and from work in vehicles owned by Oakland. The E-4 plaintiffs are motorcycle officers who claim they have not been properly compensated for performing the same activities on their motorcycles while off duty.

Oakland suggests that the time plaintiffs spend enforcing traffic laws on their daily commutes to work is not compensable because it is incidental to the commute. Law enforcement is indisputably an "integral and indispensable" part of a police officer's principal activities. *Ballaris*, 370 F.3d at 910 (9th Cir. 2004). The question, then, is whether Oakland suffered or permitted plaintiffs to perform this work without seeking overtime compensation. As the Court has discussed, there are factual disputes on this question.

### iii.    Subgroups B and E-2

Plaintiffs in subgroup B claim that they have not been properly compensated for time they spent

8

cleaning and maintaining their police uniforms and equipment. The subgroup E-2 plaintiffs are motorcycle officers who make the same claim. The maintenance and cleaning tasks at issue cover a wide range of activities, including polishing boots, cleaning handcuffs, wiping down helmets, polishing gun belts, and cleaning shotguns. Officers' estimates of the amount of time they spend on these tasks range from less than ten seconds (checking pepper spray) to an hour (polishing boots). Oakland does not dispute that these activities constitute work for purposes of the FLSA, but contends that these activities are nonetheless not compensable because the time officers spend on them is *de minimis*.

"As a general rule, employees cannot recover for otherwise compensable time if it is *de minimis*." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 692) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act.")). *Lindow* provides a three-factor test for determining whether otherwise compensable time is *de minimis*. Courts should consider: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow*, 738 F.2d at 1063. *See, e.g.*, *id.* at 1064 (holding that average of 7-8 minutes a reviewing log book pre-shift was *de minimis* because of "the administrative difficulty of recording the time and the irregularity of the additional pre-shift work."); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 912 (9th Cir. 2004) (holding that 20-30 minutes spent every day donning and doffing uniforms not *de minimis* as a matter of law).

The parties dispute how to characterize the cleaning and maintenance activities performed by plaintiffs. Oakland focuses on each activity individually.[5] Under this view, time spent cleaning handcuffs, for example, is *de minimis.* For example, Oakland has compiled plaintiffs' deposition

---

[5] Oakland claims that plaintiffs seek compensation for 150 activities. *See* Def. Reply at 4 n.1. Oakland's chart in support of this claim is not helpful for assessing plaintiffs' claims regarding equipment and uniforms because it includes activities (such as assisting disabled motorists and making court appearances) that are not included in subgroups B and E-2. *See* Supp. Decl. of Gregory B. Lewis in Supp. of Def. B & E-2 Mot., ex. A.

9

testimony concerning the amount of time they spend cleaning handcuffs and points out that while one officer spends less than ten seconds checking handcuffs every day, another spends five minutes every six months. *See* Decl. of Gregory B. Lewis in Supp. of Def's B & E-2 Mot., ex. Q. Plaintiffs, however, group these activities in two general categories: time spent maintaining and cleaning uniforms, and time spent maintaining and cleaning equipment. According to plaintiffs' view, the few minutes officers spend cleaning each item of equipment (e.g. face shield, firearm, magazine pouch, spit shine holster, gun belt, handcuff holder, knife) should be evaluated in the aggregate.

If the Court were to accept Oakland's approach and consider each activity in isolation, there can be no doubt that time spent cleaning handcuffs – whether less than ten seconds every day or five minutes every six months – is *de minimis*. The Court finds, however, that plaintiffs' view is more persuasive. In the context of donning and doffing, the Ninth Circuit has considered the uniform as a whole, not the time spent donning and doffing each item of clothing. *See Ballaris*, 370 F.3d at 912. Plaintiffs have presented evidence that they performed the maintenance and cleaning activities at issue here regularly and in consolidated blocks of time. Oakland cites deposition testimony suggesting that there is wide variety in the amount of time it takes to perform these activities, as well as the particular cleaning and maintenance tasks that officers perform. Thus, there are disputed issues of fact as to each of the *Lindow* factors. Accordingly, the Court denies Oakland's motion for summary judgment on this issue.[6]

### 3.    Motion to Strike

In Oakland's reply brief in support of its motion on subgroups F and G, Oakland argues, for the first time, that Oakland is entitled to an exemption from overtime requirements under 29 U.S.C. § 207(k). Section 207(k) provides that public agencies engaged in "fire protection or law enforcement activities" need not provide overtime pay if the actual hours an employee worked exceed 171 in a 28-day period. Oakland claims that plaintiffs have cited no evidence that they worked the requisite hours.

---

[6] Oakland also argues, in its reply briefs, that the time plaintiffs spent on traffic enforcement (subgroups D & E-4) and preparing for and concluding their shifts (subgroups F and G) is *de minimis*. The Court finds that Oakland has waived this argument by failing to raise it in its opening motions. In any event, the Court finds that there are disputed facts about the amount of time plaintiffs spent on these activities.

10

Plaintiffs argue that Oakland has waived this argument by failing to raise it in Oakland's opening motion and move to strike the argument from Oakland's reply brief.[7]

The Court agrees with plaintiffs that Oakland failed to raise this argument in a timely manner and that considering this issue without full briefing would unfairly prejudice plaintiffs. Nonetheless, the Court is determined to decide this case on its merits and to narrow the issues for trial where possible. Accordingly, if Oakland wishes to raise this argument in its opposition to plaintiffs' motion on the classwide rate of pay [Docket No. 169] it may do so. If Oakland also elects to move for summary judgment on this issue, the Court shall adopt the following briefing schedule:

> 9/15/09 – Oakland's opposition/motion
> 9/25/09 – Plaintiffs' reply/opposition
> 10/2/09 – Oakland's reply
> 10/16/09 – Hearing

Accordingly, the Court denies plaintiffs' motion to strike as moot.

### 4. Remaining Issues

Oakland has filed five sets of objections to evidence cited by plaintiffs in support of their oppositions. None of the evidence to which Oakland objects was material to the Court's evaluation of the instant motions. Accordingly, Oakland's objections are denied without prejudice to reconsideration at trial.

Oakland also asks that this Court decertify the subgroups for litigation on a collective action basis.[8] FLSA cases may proceed as collective actions, with plaintiffs who are "similarly situated" filing written consents to join the case. 29 U.S.C. § 216(b). The plaintiffs bear the burden of showing that the representative plaintiffs and proposed collective action group are "similarly situated" for purposes of § 216(b). *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004) (Walker, J.). The majority of courts apply a two-step approach to evaluate the appropriateness of proceeding on a

---

[7] Plaintiffs also move to strike the *de minimis* arguments that Oakland raised in its reply briefs on subgroups F and G, and D and E-4. The Court has addressed this argument, *infra*, note 6.

[8] On March 11, 2008, when the parties stipulated to conditionally certify this case as a collective action, Oakland reserved its right to move for decertification of any subgroup. *See* Docket No. 74 at ¶ 15.

11

collective basis, first providing for initial notice to prospective plaintiffs and later evaluating whether the plaintiffs are similarly situated. *Id.* (collecting cases). At the second stage of the analysis, the court may weigh factors including: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Id.* at 467.

The Court finds that plaintiffs have met their burden in establishing that they are similarly situated. First, as discussed in this order, there are disputed facts about plaintiffs' employment setting. Plaintiffs have cited evidence suggesting that they were subjected to common policies and practices and therefore worked under similar circumstances. Second, Oakland does not point to unique defenses with respect to individual plaintiffs. Instead, it argues that plaintiffs engaged in different purportedly uncompensated work, and for different amounts of time. This is a reprise of Oakland's argument about damages, which the Court has addressed. As plaintiffs have stipulated that the testimony of representative plaintiffs will apply to all members of the subgroup, this factor weighs in *favor* of proceeding on a collective basis. Finally, fairness and procedural considerations, including the number of plaintiffs in this case and the effectiveness of allowing them to pool their resources for litigation, also weigh in favor of collective treatment. Accordingly, Oakland's motions for declassification are denied.

## CONCLUSION

For the foregoing reasons and good cause shown, plaintiffs' motion to strike [Docket No. 328] is denied at moot and the following motions for partial summary judgment are denied:

Plaintiffs' motion on subgroups N, O, and P. [Docket No. 162]
Defendant's motion on subgroups N, O, and P. [Docket No. 114]
Defendant's motion on subgroups B and E-2. [Docket Nos. 177, 188]
Defendant's motion on subgroups C and E-3. [Docket No. 196]
Defendant's motion on subgroups D and E-4. [Docket No. 199]
Defendant's motion on subgroups F and G. [Docket No. 190]

**IT IS SO ORDERED.**

Dated: August 21, 2009

SUSAN ILLSTON
United States District Judge

12