IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT VALLADON, et al., | No. C 06-07478 SI |
| Plaintiffs, | **ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| CITY OF OAKLAND, | |
| Defendant. | |

On October 16, 2009, the Court heard oral argument on plaintiffs' motion for partial summary judgment regarding the classwide rate of pay claims, defendant's motion for partial summary judgment regarding the statute of limitations and liquidated damages, and the parties' cross-motions for partial summary judgment on the donning and doffing claims. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court GRANTS in part and DENIES in part plaintiffs' motion regarding the rate of pay claims and DENIES all other motions in full.

**BACKGROUND**

Plaintiffs are approximately 560 police officers who are or were employed by the City of Oakland ("Oakland"). Plaintiffs assert a number of claims under the Fair Labor Standards Act ("FLSA"). Now before the Court are four motions for partial summary judgment: plaintiffs' motion regarding the classwide regular rate of pay claim; defendant's motion regarding plaintiffs' claims for liquidated damages and willfulness; and the parties' cross-motions regarding the "donning and doffing" claims (subgroups A and E-1).

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id*. Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

**I.   Classwide Claim Regarding Calculation of "Regular Rate of Pay"**

Plaintiffs move for partial summary judgment on their classwide claim that Oakland has failed to calculate their overtime and compensatory time off ("comp time") pay in accordance with the guidelines set forth in the FLSA. 29 U.S.C. § 701(a)(1) of the FLSA provides that an employee shall

be paid for overtime hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(o), in turn, permits public employers to recompense employees for overtime work by way of comp time rather than cash; under this subsection, an employee will accrue one-and-a-half hours of paid leave for each hour of overtime. Comp time cashed in by a current employee must be paid at the employee's regular rate of pay, while an employee cashing in accrued comp time at the time of his termination must be paid at the greater of his final regular rate of pay or the average rate of pay for the last three years of employment. *Id.*

The statute defines an employee's "regular rate" as including "all remuneration for employment," with eight specific exceptions not at issue here. *Id.* § 207(e)(1)-(8). Plaintiffs assert Oakland has violated the FLSA by failing to include certain pay premiums, such as night shift differentials and education incentives,[1] when determining plaintiffs' regular rate of pay for the purpose of calculating overtime and comp time pay. Defendant does not dispute that pay premiums must count toward the regular rate used to calculate overtime under the FLSA, but asserts that disputed issues of fact preclude summary judgment in plaintiffs' favor.

### A. Overtime Pay

In support of their arguments regarding overtime pay, plaintiffs present an analysis of defendant's payroll records carried out by plaintiffs' payroll and damages expert, Dr. Murray Simpson. After reviewing defendant's raw payroll data, Dr. Simpson wrote a computer program consolidating the data into several databases that classed each payroll event into the relevant 28-day work period during which it occurred.[2] *See* Expert Report, ex. 9 to Suppl. Sheetz Decl. (Docket No. 359-2), at 3. Dr.

---

[1] The full list of premiums plaintiffs contend are not included in calculating their regular rate of pay is as follows: (1) premium for temporary assignment to a higher classification; (2) standby duty premium; (3) bilingual premium; (4) motorcycle employee premium; (5) Helicopter/Airport Security Section employee premium; (6) field training officer premium; (7) evidence technician premium; (8) longevity premium; (9) night shift differential premium; (10) premium for certificate from California's Commission on Peace Officer Standards and Training; and (11) premium for employees with associate's, bachelor's, or master's degrees.

[2] The parties do not dispute that Oakland is entitled to a "7K exemption," which provides that law enforcement employees are entitled to overtime for hours worked in excess of 171 hours in a 28-day pay period. *See* 29 U.S.C. § 207(k); 29 C.F.R. § 553.230(c).

3

Simpson identified each instance overtime pay was due to a particular plaintiff, and the amount that would be due, by calculating the hours worked in excess of 171 within a given pay period, multiplying the number of hours by 1.5 times the plaintiffs' regular rate of pay, and subtracting the amount of overtime that was actually paid out to the plaintiff. Expert Report at 7-8. Using this method, Dr. Simpson determined that Oakland calculates overtime pay in the amount of 1.5 times an employee's base wage, exclusive of any pay premiums. Simpson Decl. ¶ 7 (Docket No. 169-1). Dr. Simpson identified a total of more than 8000 occasions on which defendant paid overtime pay according to a plaintiff's base wage. Suppl. Simpson Decl. ¶ 3 (Docket No. 359-1). Dr. Simpson calculated the damages due to plaintiffs in an amount in excess of one million dollars. Expert Report at 8. After conducting his analysis, Dr. Simpson provided Oakland with discs containing the databases he had created.[3] Suppl. Simpson Decl. ¶¶ 1b-1c.

In opposition to plaintiffs' motion, defendant offers the deposition testimony of several of its employees as well as declarations by two experts critiquing Dr. Simpson's methodology. For the reasons set forth below, the Court finds defendant's submissions insufficient to create a genuine dispute of material fact regarding overtime pay distributed prior to 2008. The Court finds, however, that defendant has established a material dispute of fact regarding Oakland's overtime pay practices from 2008 onward.

First, defendant offers the testimony of Treasury Manager Katano Kasaine. When asked how Oakland calculates overtime pay, Ms. Kasaine testified, "What I understand is once an employee hits 171 hours, at that point in time, there we add the premium meaning all their premium hours are added into their calculation to give them their FLSA premium hours." Kasaine Depo., ex. A to Spellberg Decl. (Docket No. 353), at 71:9-12. However, when asked to describe which pay premiums Oakland includes in its calculation of an employee's regular rate of pay, Ms. Kasaine stated, "I would be speculating if

---

[3] At oral argument, defendant asserted that Dr. Simpson had not provided this information in an accessible or usable format that would permit defendants to check the accuracy of Dr. Simpson's calculations. Plaintiffs' counsel explained that Dr. Simpson's programming was created in SAS, which counsel represented to be a widely-used "off-the-shelf" statistical programming tool. Plaintiffs' counsel offered to turn over Dr. Simpson's programming to defendant, along with a copy of the SAS software to enable defendant to actually open and view the data. Plaintiffs are hereby ordered to turn over the software and Dr. Simpson's programming by **October 30, 2009**.

4

you asked me specifics," *id.* at 72:14-15, repeatedly made statements such as, "I don't know exactly what the system does" and "I don't want to guess what the system is doing," *id.* at 70:17-18, 87:9-10, and stated that her testimony was based on her "basic understanding of what [the system] should be doing," *id.* at 86:16-17. The Court finds Ms. Kasaine's testimony too speculative to defeat plaintiffs' evidence.

Second, defendant offers the deposition testimony of Lorna Guice, its Principal Financial Analyst. Ms. Guice testified that Oakland includes pay premiums such as shift pay and education incentives in determining employees' overtime pay. Guice Depo., ex. B to Spellberg Decl., at 73:16-23. Ms. Guice could not, however, describe the pay calculation system with any specificity. She stated: "[I]t takes the hours and it subtracts the 171 and you look at what's left, and it's categorized whether it was premium or whatever, and there's some calculations done and we determine what is due." *Id.* at 77:4-7. Ms. Guice testified that Ms. Kasaine is the person who would know more about the way the system calculates overtime pay. *Id.* at 77:11. Because Ms. Guice did not appear to have any specific knowledge of the way Oakland makes pay calculations, the Court also finds her testimony too conclusory and speculative to create a genuine issue of fact.

Third, defendant offers declarations from two defense payroll experts, Mary Furst and Mark Cohen. Both Ms. Furst and Mr. Cohen dispute the reliability of Dr. Simpson's methodology. However, in so doing, neither expert specifically explains the nature of the critique, nor offers an alternative method of assessing the data. Ms. Furst states:

> I reviewed the deposition testimony and much of the work product of plaintiffs' expert, Murray Simpson. . . . Upon reviewing and comparing the testimony between Mr. Simpson's declaration and deposition, I discovered that Mr. Simpson uses a different computation methodology in his declaration testimony than he testified about in his deposition testimony. This change is significant because despite substantial effort on our part, we have never been able to replicate Mr. Simpson's conclusions using his stated methodologies. This is troubling because it suggests his methodologies are inconsistent and are yielding unverifiable numbers for all of his regular rate calculations.

Furst Decl. ¶¶ 3-5 (Docket No. 352). The Court finds that Ms. Furst's declaration does not create a genuine issue of fact, for two reasons. First, Ms. Furst's assertions are stated in a conclusory fashion, with no explanation of the inconsistency she identified. Although Ms. Furst's analysis may have been inhibited by defendant's inability to open and view Dr. Simpson's programming, Ms. Furst's failure to

5

1 offer any alternative calculations is a deficiency that renders her declaration insufficient to create a
2 genuine factual dispute. Second, to the extent Ms. Furst's declaration creates a dispute regarding the
3 exact amount of the *damages* to which plaintiffs may be entitled, that dispute does not preclude
4 summary judgment on the issue of defendant's *liability*.

5 Likewise, in his declaration, Mr. Cohen takes issue with Dr. Simpson's technique of calculating
6 a plaintiff's regular hourly rate by dividing his total pay during a given pay period by the number of
7 non-overtime hours worked in that pay period. *See* Cohen Decl. ¶ 6 (Docket No. 351). Mr. Cohen
8 states, "Insofar as the correct measure is total hours instead of non-overtime hours (the measure used
9 by Simpson), Dr. Simpson's methodology overstates the contribution that premium pay makes to the
10 'regular' rate of pay." *Id.* Even assuming that Mr. Cohen's critique of Dr. Simpson's methodology is
11 valid, it does not create a material dispute of fact for the reason that it challenges only the amount of
12 damages to which plaintiffs may be entitled, and does not undermine Dr. Simpson's conclusions as to
13 liability.

14 Ms. Furst's declaration presents a separate issue that creates a significant point of contention
15 between the parties. In support of their motion for partial summary judgment on the rate of pay claim,
16 plaintiffs point to deposition testimony in which Ms. Furst appears to have stated affirmatively that, to
17 her knowledge, Oakland does not include pay premiums in calculating overtime pay. *See* Furst Decl.,
18 ex. C to Sheetz Decl. (Docket No. 150), at 65:18-21. In her declaration in support of defendant's
19 opposition, however, Ms. Furst states that the excerpt provided by plaintiffs fails to include pages
20 demonstrating that she was referring to *contract* overtime pay, rather than to FLSA-mandated overtime
21 pay. *See* Furst Decl. ¶ 6. Even assuming this is true, Ms. Furst's declaration does not create a genuine
22 issue of material fact concerning whether defendant violated its obligations under the FLSA. Ms.
23 Furst's testimony regarding Oakland's contract overtime practices would again go only to damages, not
24 to liability. Although defense counsel asserted at oral argument that the City's payment of contract
25 overtime – admittedly at a rate of 1.5 times a employee's base wage – could cancel out Oakland's
26 liability for FLSA overtime payments, counsel's assertion was not supported by the record, nor raised
27 in defendant's papers. The Court has no obligation to "scour the record in search of a genuine issue of
28 triable fact," but rather relies "on the nonmoving party to identify with reasonable particularity the

6

evidence that precludes summary judgment." *Keenan v. Allan* 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). Defendant's assertions with respect to contract overtime fail to meet this burden.

Finally, defendant cites the testimony of Janice Black, its Senior Human Resources Systems Analyst. Ms. Black testified at her deposition that once an employee crosses the 171-hour threshold, the system determines his or her overtime pay by including any pay premiums in the employee's hourly rate, then calculating "the time and a half for those premium hours." Black Depo., ex. 7 to Suppl. Sheetz Decl., at 89:19-90:1. Ms. Black was able to testify regarding the payroll system in some detail, but admitted at her deposition that her knowledge of the system pertained largely to the period beginning in 2008, when she designed and implemented significant changes to the system. *Id.* at 99:7-100:11. Although Ms. Black stated that she believed the system included pay premiums in its overtime calculations even prior to the 2008 overhaul, she admitted that she was "definitely more familiar with the way [she] changed it to work and less with the way it had worked before." *Id.* at 107:2-4. Moreover, Ms. Black stated that in implementing the system changes, her goal was to "change[] . . . the whole direction of the . . . calculations." *Id.* at 99:25-100:1. In a supplemental declaration in support of plaintiff's reply brief, Dr. Simpson does not address Ms. Black's statements regarding the operation of the system after these changes. Accordingly, although Ms. Black's testimony is insufficient to raise a genuine dispute of material fact regarding the operation of Oakland's payroll system prior to the 2008 overhaul, the Court concludes her testimony does create a genuine issue regarding whether the system began to incorporate pay premiums into its overtime calculations after the 2008 overhaul. Plaintiff's motion for partial summary judgment on its overtime pay claims is therefore GRANTED in part and DENIED in part.

### B. Comp Time Pay

In support of their arguments regarding the rate of comp time pay, plaintiffs present further testimony and evidence from Dr. Simpson. Dr. Simpson concluded that, during the period at issue, Oakland made 1000 comp time payments to plaintiffs in three different categories: (1) those terminating service with the police department; (2) those who have earned comp time beyond the 480-hour statutory

7

1  limit; and (3) those who ask to "sell back" a portion of their accrued comp time in exchange for cash.
2  Simpson Decl. ¶ 11.

Dr. Simpson's conclusions with respect to plaintiffs terminating their employment with Oakland and plaintiffs cashing in comp time hours beyond their permitted "maximum accrual" rest on a number of inferences drawn from the figures provided in Oakland's payroll records. As explained by Dr. Simpson, defendant's payroll records do not reflect the number of hours associated with comp time payments to these plaintiffs. *Id.* ¶¶ 14, 19. Accordingly, Dr. Simpson divided the amount paid to a given plaintiff by his or her base hourly rate, and found that the result led to an increment of a whole hour, half hour, quarter hour, or eight of an hour in every instance. *Id.* ¶¶ 15-17. Dr. Simpson found that the probability of such a result occurring by chance was 281.5 in a trillion for the terminating plaintiffs, and $1.98155^{-188}$ for the "maximum accrual" plaintiffs.[4] *Id.* ¶¶ 16, 19. Dr. Simpson concluded based on these low probabilities that defendant must have compensated the terminating and "maximum accrual" plaintiffs according to their base rates, rather than the FLSA-mandated regular rates. *Id.* ¶ 16.

Although defendant does not directly challenge Dr. Simpson's methodology, the Court nonetheless concludes that plaintiffs' evidence does not provide a proper basis for summary judgment. The drawing of inferences from the facts presented – which is precisely what Dr. Simpson's analysis asks the Court to do – is a task better left to the jury. *See Anderson*, 477 U.S. at 255 (holding that "the drawing of legitimate inferences from the facts" is a "jury function[], not [the function] of a judge . . . ruling on a motion for summary judgment").

Plaintiffs exercising their option to "sell back" a portion of their accrued comp time in exchange for cash present a different question, since Oakland's payroll records do reflect the number of hours cashed in by these plaintiffs. Simpson Decl. ¶ 12. In his declaration in support of plaintiffs' motion, Dr. Simpson states that Oakland compensates "sell back" plaintiffs at their base rate of pay, rather than the regular rate of pay, and provides an example concerning plaintiff Valladon's sell-back pay. *Id.* ¶¶ 12-13. In opposition, defendant presents a declaration from Ms. Guice, its Principal Financial Analyst,

---

[4] Dr. Simpson explains that $1.98155^{-188}$ is a number with 187 zeroes after the decimal point, followed by the numbers 198155. *Id.* ¶ 19.

who is "responsible for and understand[s] how 'comp time' hours are accrued and booked by Oakland police officers." Guice Decl. ¶ 3 (Docket No. 354). In the portions of Ms. Guice's deposition included in the parties' papers, Ms. Guice was not asked whether pay premiums are included in comp time payments made to "sell back" plaintiffs. Defendant therefore submits Ms. Guice's declaration to clarify this point. Ms. Guice explains in the declaration that the accrual and payment of comp time to "sell back" plaintiffs occur as follows:

> When an Oakland officer works overtime, he or she can elect to be paid at time and one half their salary for the hours worked or he or she can elect to "book" that worked overtime as comp time.
>
> . . . .When the comp time is booked by an officer, any FLSA premiums due to the officer are paid at that time. In other words, any FLSA premiums earned on the overtime worked (which now is booked as comp time) are paid to the officer when the comp time is booked. . . . [S]ince the comp time was booked at time and a half . . . and all premiums were paid when the comp time was booked, the pay back in cash of the unused comp time to the officer includes everything owed to the officer.

*Id.* ¶¶ 4, 6. Dr. Simpson disputes this assertion in his supplemental declaration in support of plaintiffs' reply. Suppl. Simpson Decl. ¶ 4. The Court concludes that these disputed issues of fact concerning defendant's method of making comp time payments to plaintiffs in the "sell back" scenario preclude summary judgment on this category of claims. Plaintiffs' motion for partial summary judgment on the comp time rate of pay claims is therefore DENIED.

The Court does not resolve at this time the amount of any damages that may be due to plaintiffs. First, plaintiffs' motion for partial summary judgment on the rate of pay claims does not specify the damages sought. Second, and significantly, future events in this case are likely to affect the amount of any damages due. Defendant asserts it is entitled to certain "credits" for contract overtime and other types of non-FLSA payments made to plaintiffs, and defendant's entitlement to such credits is a factual issue that must be considered by a jury. The Court's conclusion that defendant's liability for the comp time claims should be decided by a jury may also affect the damages calculation. Finally, the Court observes that some of Dr. Simpson's calculations regarding the damages due to plaintiffs appear to stem from the use of a three-year statute of limitations. In light of the Court's conclusion, *infra*, that there are disputed issues of fact as to whether a two-year or three-year limitations period applies, the damages calculations will require revision after a jury has decided the relevant time period for plaintiffs' claims.

## II. "Donning and Doffing" Claims

The parties bring cross-motions for summary judgment regarding plaintiffs' claim that the City has failed to compensate them for time spent donning and doffing their uniforms and gear.[5] This claim encompasses officers in subgroup A (all officers, other than motorcycle officers, who claim they spent time before and after their shifts donning and doffing gear) and subgroup E-1 (motorcycle officers).

For non-motorcycle officers, the police uniform consists of a jacket, hat, trousers, belt, short- or long-sleeved shirt, undershirt, badge, nameplate, socks, and shoes. In inclement weather, an officer may be authorized to wear a "utility uniform" instead of the standard dress uniform. *See* Israel Decl. ¶ 4 (Docket No. 349); Race Depo., ex. L to Lee Decl. (Docket No. 347), at 20:10-21:14. For motorcycle officers, the uniform consists of the foregoing items as well as a helmet (when actually riding the motorcycle) or utility cap, leather jacket, breeches, scarf, turtleneck sweater, and motorcycle boots. *Id.* ¶ 5. For both motorcycle and non-motorcycle officers, required gear consists of a semi-automatic pistol with gun holster, extra ammunition, handcuffs and handcuff key, baton with baton strip and ring, aerosol canister and holder, whistle, key ring, flashlight, radio, and protective vest. *Id.* ¶ 6. Most of this gear attaches to a "duty belt" that an officer affixes to his or her trouser belt with leather or nylon straps; the protective vest is custom-fitted to the officer and must be worn on the body. *Id.* ¶¶ 6-8.

Plaintiffs claim they are entitled to partial summary judgment on this claim because there is no reasonable dispute that the donning and doffing of police uniforms and gear is "integral and indispensable" to the job functions of a police officer, within the meaning of controlling case law. Defendant claims it is entitled to partial summary judgment on this claim for two primary reasons: (1) donning and doffing is not "integral and indispensable" to the job where, as here, plaintiffs are permitted to don and doff their uniforms and gear at home; and (2) the parties' Memorandum of Understanding ("MOU") establishes a custom or practice of not compensating officers for donning and doffing,

---

[5] For purposes of ruling on these motions, the Court treats uniforms and gear as a single entity. The parties have presented evidence that the protective vest, technically part of an officer's gear, must be worn between an officer's undershirt and shirt, meaning that the process of donning and doffing the vest is not separable from the process of dressing and undressing. Similarly, although an officer's duty belt may be kept in one piece, it still must be secured to an officer's pants by means of straps. The Court is aware that some other district courts considering the issue have considered uniforms and gear to present distinct questions, but concludes that, under the facts of this case, there is no salient distinction.

10

establishing an exemption under 29 U.S.C. § 203(o).

### A. Donning and doffing outside police premises

The FLSA states in broad terms that employers must pay employees for "all hours worked," 29 U.S.C. § 207, but provides no definition of the term "work." In the Portal-to-Portal Act of 1947, Congress clarified that "work" does not include activities that are "preliminary or postliminary to [the] principal activity or activities" of a given job. 29 U.S.C. § 254(a)(2). Even if an activity is performed before or after a scheduled shift, however, it is not "preliminary or postliminary" if it is "integral and indispensable" to the employee's principal job activities. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). The Ninth Circuit has held that an activity is "integral and indispensable" if it is both "necessary to the principal work performed and done for the benefit of the employer." *Alvarez v. IBP*, 339 F.3d 894, 903 (9th Cir. 2003).

In *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004), the Ninth Circuit elaborated upon the test set forth in *Alvarez*, holding that the donning and doffing of protective clothing worn by employees of a silicon chip plant was compensable because it was necessary to the work performed, done for the benefit of the employer, and, pursuant to the employer's rules, done only on the employer's premises. *Id.* at 910-11. In focusing on the location of the donning and doffing activities, the court cited the FLSA's implementing regulations, stating that "'where the changing of clothes *on the employer's premises* is required by law, *by rules of the employer*, or by the nature of the work,' the activity may be considered integral and indispensable to the principal activities." *Id.* at 910 (quoting 29 C.F.R. § 790.8(c) n.65) (original emphasis).

After *Ballaris*, the prevailing sentiment among district courts in the Ninth Circuit is that the donning and doffing of police uniforms or gear is not compensable under the FLSA where officers are not required to don and doff on police premises. Four district courts in the circuit have reached this conclusion directly. *See Dager v. City of Phoenix*, No. 06-1412, 2009 WL 531864 (D. Ariz. Jan. 21, 2009); *Bamonte v. City of Mesa*, No. 06-1860, 2008 WL 1746168 (D. Ariz. Apr. 14, 2008); *Abbe v. City of San Diego*, No. 05-1629, 2007 WL 4146696 (S.D. Cal. Nov. 9, 2007); *see also* Judge Wu's August 10, 2009 unpublished ruling in *Edwards v. City of Long Beach*, No. 05-8990 (Docket No. 1389). Two

11

other courts have relied on the principle without stating it directly. *See Maciel v. City of Los Angeles*, 569 F. Supp. 2d 1038, 1049 (C.D. Cal. 2008) (donning and doffing of protective gear was compensable where officers were "discouraged" from wearing gear while off-duty, such that "[f]or all practical purposes, the equipment must be donned and doffed at the assigned station"); *Martin v. City of Richmond*, 504 F. Supp. 2d 766, 774-76 (N.D. Cal. 2007) (denying summary judgment where there was a triable issue regarding whether the nature of the work required plaintiffs to don and doff protective gear on police premises). One district court in this circuit has held that donning and doffing of police uniforms and gear is a compensable activity under the FLSA. *See Lemmon v. City of San Leandro*, 538 F. Supp. 2d 1200 (N.D. Cal. 2007). Even the *Lemmon* court, however, reached its holding under a factual scenario in which "most officers don[ned] and doff[ed] at the station in practice," providing "a strong indicia that the donning and doffing of the uniform at the police station [was] a *de facto* requirement." *Id.* at 1206. The reasoning of these prior cases persuades the Court that donning and doffing of police uniforms and gear is not, as a matter of law, compensable under the FLSA where neither the law, the employer's rules, nor the nature of the work requires officers to don and doff on police premises.[6]

In this case, there is no dispute that police department policy officially permits plaintiffs to don and doff at home. *See* Israel Decl. ¶ 9; Hoffman Decl., ex. C, at 2 (Docket No. 171). However, plaintiffs contend in their motion for summary judgment on this claim that the nature of police work means that plaintiffs do not have a real option to don and doff their uniforms and gear, in particular their gear, at home. In plaintiffs' opposition to defendant's motion, they assert that there is at least a material dispute of fact with respect to whether plaintiffs have the option to don and doff at home.

The Court agrees with plaintiffs that material issues of fact regarding plaintiffs' ability to dress at home preclude a grant of summary judgment in favor of either party on this claim. The officers who gave deposition testimony provided differing answers not only with respect to whether they don and doff their uniforms and/or gear at home, but also with respect to whether Oakland permits them to do

---

[6] The Court notes that the case cited by plaintiffs' counsel at oral argument in support of the assertion that the location of donning and doffing is not a key consideration in the Ninth Circuit, *Rutti v. Lojack*, 578 F.3d 1084 (9th Cir. 2009), is inapposite in that it dealt with preliminary and postliminary activities related to the plaintiff's commute, which is clearly non-compensable under the FLSA.

12

so. Officer Kenneth Thompson testified that he "always" dons and doffs his uniform at home, but leaves his duty belt in his locker at the police station. Thompson Depo., ex. C to Lee Decl. (Docket No. 347), at 15:7-17. Thompson testified that he knows of some officers who don and doff at the station, and knows of other officers who don and doff at home, either partly or fully. *Id.* at 28:15-29:23. Officer Charles Krebs testified that he dresses at home when lockers are unavailable or when he wants to maximize his sleep time. Krebs Depo., ex. D to Lee Decl., at 21:13-22:13. Krebs stated that he "guessed" he had the option to dress at home because "nobody has ever really said that we couldn't," and because he "know[s] officers that do change at home and show up in uniform on a regular basis." *Id.* at 22:23-23:4. Officer Victor Garcia testified that he dons and doffs at the police station, but agreed that there was no written policy mandating donning and doffing on police premises, and stated that he "supposed" he could dress at home if he so desired. *See* Garcia Depo., ex. E to Lee Decl., at 32:15-22. Officer Albert Liwanag stated that he dressed at home only when riding his motorcycle home, but that the "common, accepted practice is to get dressed at the department." Liwanag Depo., ex. F to Lee Decl., at 27:7-28:8. One officer, Justin Buna, testified affirmatively that he never dons and doffs at home because officers are "not allowed to" pursuant to department policy. Buna Depo., ex. R to Sheetz Decl., at 32:22-33:18. Defense counsel asserted at oral argument that Officer Buna's testimony was immaterial because it reflected his belief, rather than any written policy. The Court disagrees with counsel's characterization of the issue. Even if Oakland does not have a formal policy preventing officers from donning and doffing at home, they may still be liable to compensate officers for such activity if it is proven that the nature of the work imposes a *de facto* requirement to that effect.

The Court observes that the facts of this case differ from the facts of cases in which defendants have been granted summary judgment on identical claims. For example, in *Bamonte*, all the motorcycle officer plaintiffs donned and doffed at home, and 8 of 13 non-motorcycle officer deponents testified they either fully or partially dressed at home. *Bamonte*, 2008 WL 1746168, at *1. Likewise, in *Dager*, the record contained evidence that motorcycle officers always donned and doffed at home; of the 37 non-motorcycle officer deponents, 12 testified they fully changed at home, 17 testified they partly changed at home, five testified they changed at the police station, and two testified that their practice varied. *Dager*, 2009 WL 531864, at *3. Here, only a handful of the 31 representative plaintiffs – including

13

motorcycle officers – stated they don and doff at home. This evidence could reasonably permit a jury to find that there is a *de facto* requirement in place that officers must don and doff on police premises. Moreover, plaintiffs have presented evidence, in the form of a declaration from Officer Scott Olthoff, that Oakland has recently changed its policy to prohibit motorcycle officers from commuting to and from work using their department-issued motorcycles. *See* Olthoff Decl. ¶ 5 (Docket No. 150-5). Defendant apparently does not dispute that this policy change has taken place. Some motorcycle officers testified in their depositions that they donned and doffed at home only when using their official motorcycles to commute, *see* Liwanag Depo. at 27:24-28:12, and Officer Olthoff stated in his declaration that he has changed his practice of dressing at home as a result of Oakland's new motorcycle policy, *see* Olthoff Decl. ¶ 6. The Court therefore concludes that there is a material dispute regarding all police officers' option and ability to don and doff at home, and DENIES the parties' cross-motions for partial summary judgment on this claim.

### B. Custom or practice of non-compensation

Defendant makes the alternative argument that plaintiffs are not entitled to compensation for the time spent donning and doffing their uniforms because the parties' collective bargaining history has established a custom or practice of non-compensation. Defendant relies on 29 U.S.C. § 203(o), which excludes from measured work time "any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." Defendant asserts that a longstanding lack of discussion of this issue during collective bargaining negotiations essentially amounts to acquiescence by plaintiffs in a custom or practice of non-compensation.

Plaintiffs argue that defendant has waived any reliance on section 203(o) by failing to plead it as an affirmative defense. The Court agrees with plaintiffs that defendant's failure to plead section 203(o) as an affirmative defense constitutes a waiver of this argument. *See Alvarez*, 339 F.3d at 905 (referring to section 203(o) as an "exemption" to FLSA liability); *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974) (explaining that "the application of an exemption under the Fair Labor

Standards Act is a matter of affirmative defense on which the employer has the burden of proof"); *see also Figas v. Horsehead Corp.*, No. 06-1344, 2008 WL 4170043, at *13 (W.D. Pa. Sept. 3, 2008) ("Section 203(o) is an affirmative defense."). Even if the defense were not waived, however, disputed issues of fact still prevent the Court from determining as a matter of law that the parties had a custom or practice of non-compensation.

As a preliminary matter, the Court rejects plaintiffs' assertion that section 203(o) is inapplicable to the present case because a police uniform does not constitute "clothes." Although a police uniform certainly has specialized significance, it clearly fits within the plain meaning of the term "clothes" as used in section 203(o). *See Abbe*, 2007 WL 4146696, at *8 ("The term 'clothes' as used in Section 203(o) plainly includes all aspects of the [police] uniform."). The Court notes, however, that a claimed exemption under section 203(o) applies only to uniforms, and not to protective gear. *See Alvarez*, 339 F.3d at 905 (construing "the 'changing clothes' exception in § [203(o)] as not including the time spent putting on personal protective equipment").

Defendant points out that the parties' MOUs contain no term regarding compensation for donning and doffing. *See* Kozicki Decl. ex. A-B (Docket No. 176). Defendant also notes that plaintiff Valladon averred in his declaration that from January 1991 to January 2009, there were "no discussions of compensation for donning and doffing the required uniforms and protective gear during negotiations or at any labor management discussions." *See* Valladon Decl. ¶¶ 3-5 (Docket No. 150-4). Defendant argues that this evidence establishes an implied term of non-compensation.

The parties dispute whether a defendant claiming the applicability of section 203(o) must show that the issue of compensation was raised during negotiations, but subsequently abandoned. In support of their contention that an issue must have been raised and abandoned to constitute an implied term of a labor agreement, plaintiffs cite three out-of-circuit cases finding an implied custom or practice where the final collective-bargaining agreement did not contain a term that had been raised during negotiations. *See Bejil v. Ethicon, Inc.*, 269 F.3d 477 (5th Cir. 2001); *Arcadi v. Nestle Food Corp.*, 38 F.3d 672 (2d Cir. 1994); *Davis v. Charoen Pokphand (USA), Inc.*, 302 F. Supp. 2d 1314 (M.D. Ala. 2004). The sole case cited by defendant in support of its argument is a Third Circuit case holding that "a particular custom or practice can become an implied term of a labor agreement through a prolonged period of

15

acquiescence." *Turner v. City of Philadelphia*, 262 F.3d 222, 226 (3d Cir. 2001). *Turner* does not support defendant's position, because in *Turner*, although plaintiffs had apparently never raised a particular issue of compensation in formal collective-bargaining negotiations, they had raised it in labor management meetings. *Id.* at 225. By contrast, in this case, there is no indication that plaintiffs ever raised the issue of compensation for donning and doffing until after the initiation of this lawsuit. Defendant cites no binding authority providing that the circumstances presented in this case may establish a custom or practice as a matter of law, rather than simply raising the inference that plaintiffs were ignorant of their potential right to compensation. Accordingly, the Court DENIES defendant's motion for partial summary judgment on this ground.

### III. Willfulness and Liquidated Damages

Defendant seeks partial summary judgment on two issues pertaining to plaintiffs' ability to recover damages. First, defendant challenges plaintiffs' assertion that the statute of limitations for its FLSA unpaid compensation claims should be extended to three years due to "willful" violations of the statute. Second, defendant challenges plaintiffs' attempt to recover liquidated damages on the ground that Oakland did not have a "good faith" belief it was in compliance with the FLSA.

#### A. Willfulness

Under the FLSA, claims for unpaid compensation are typically subject to a two-year statute of limitations. 29 U.S.C. § 255(a). The limitations period may, however, be extended to three years for a cause of action "arising out of a willful violation" of the statute. *Id.* "A violation of the FLSA is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" *Chao v. A-1 Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation" under the FLSA, its action is not willful. *McLaughlin*, 486 U.S. at 135 n.13.

The Court agrees with defense counsel's assertion at oral argument that the unsettled nature of the law governing compensation for donning and doffing means that the failure to compensate for it

cannot have been a willful violation of the FLSA. However, defendant made this motion in a blanket fashion with respect to all of plaintiffs' causes of action. Indeed, in its motion, defendant focuses on a single category of claims: those related to Oakland's alleged failure to compensate for certain off-the-clock work. When defendant moved for summary judgment on this claim, it asserted that Oakland had no knowledge plaintiffs were performing the off-the-clock work at issue. In the present motion, defendant claims the same lack of knowledge as evidence that it did not behave recklessly. However, defendant's motion was filed before the Court's August 21, 2009 Order finding disputed issues of fact as to whether Oakland had actual or constructive knowledge that plaintiffs were performing the off-the-clock work at issue. *See* Aug. 21, 2009 Order at 4-5 (Docket No. 337). Even defendant's reply in support of the present motion, filed more than a month after the August 21, 2009 Order, does not address the Court's determination. Rather, defendant asserts that to meet their burden of proving willfulness, plaintiffs must show "that the City was actually advised about the problem and then intentionally ignored it."

The primary case defendant cites to support this proposition, *Chao*, did not set forth such a requirement. *Chao* held only that under the circumstances of that case, where employees complained about performing uncompensated overtime and were given evasive responses by the employer, it was possible to find recklessness as a matter of law, especially in light of the fact that the employer "previously had run-ins with the Labor Department" regarding its FLSA violations. *Chao*, 346 F.3d at 918-19. The other cases cited by defendant are similarly unavailing in that they do not set forth certain occurrences that *must* be shown to support a finding of willfulness, but rather involve findings of willfulness under particular factual circumstances. *See Bankston v. Illinois*, 60 F.3d 1249 (7th Cir. 1995) (holding that jury reasonably could have found willfulness where employer received notice from its legal department that it was violating the FLSA, but took no action); *Cloutier v. City of Phenix City*, 834 F. Supp. 366 (M.D. Ala. 1993) (finding willfulness as a matter of law where plaintiff submitted evidence that employer falsified documents to appear FLSA-compliant, and employer offered no evidence in rebuttal). The Court is not of the view that plaintiffs have only one method of proving willfulness.

Even if the standard defendant advocates were the correct one, defendant would not be entitled

17

1  to judgment as a matter of law on the issue of willfulness with respect to the off-the-clock pay claims.
2  Plaintiffs point to evidence that the Oakland Police Officer's Association initiated a grievance with
3  Oakland in 2003, claiming that Oakland was failing to comply with its FLSA obligations regarding the
4  inclusion of pay premiums when calculating comp time pay. *See* Hoffman Decl. ¶ 3 (Docket No. 341);
5  *id.*, ex. A. As previously discussed, defendant did not reevaluate its payroll calculation system until
6  2008. Thus, even under defendant's own standard, there are clearly sufficient facts in the record to
7  permit a jury to find that defendant acted recklessly with respect to certain issues.

8  Moreover, plaintiffs have presented a number of facts creating a genuine dispute regarding
9  whether defendant acted recklessly with respect to the other violations at issue in this case. These facts
10 include: (1) evidence that each employee who was asked about Oakland's monitoring of FLSA
11 compliance pointed to someone else as being responsible for such monitoring; (2) lack of FLSA training
12 for Oakland employees; (3) failure to revise an FLSA policy drafted in 1986; (4) failure to keep accurate
13 records; and (5) factual issues as to whether Oakland knew about and tolerated FLSA violations.

14 Therefore, in light of the disputed evidence discussed above, the Court DENIES defendant's
15 motion for determination of the applicable statute of limitations as a matter of law.

### B. Good Faith

18 Defendant bears the burden of showing it acted in good faith, such that plaintiffs are not entitled
19 to liquidated damages, or only to a reduced amount. 29 U.S.C.§ 260 (providing that "if the employer
20 shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith
21 and that he had reasonable grounds for believing that his act or omission was not a violation of the
22 [FLSA]." the court has the discretion to reduce or eliminate an award of liquidated damages). To meet
23 its burden, defendant must show both that it had a subjective good-faith belief that it was in compliance
24 with the FLSA, and that it had objectively reasonable grounds for so believing. *Bratt v. County of Los*
25 *Angeles*, 912 F.2d 1066, 1071-72 (9th Cir. 1990).

26 Defendant has not met its burden of establishing as a matter of law that it acted reasonably and
27 in good faith. Regardless of whether defendant had a good-faith belief in its FLSA compliance, the
28 aforementioned factual disputes raised by plaintiff make summary judgment inappropriate as to whether

18

there was a reasonable basis for defendant's belief that its actions did not violate the FLSA. Accordingly, defendant's motion for partial summary judgment on the issue of plaintiffs' entitlement to liquidated damages is DENIED.

## IV. Evidentiary Objections

Defendant has filed a set of objections to evidence cited by plaintiffs in support of their opposition to defendant's motion for partial summary judgment on the donning and doffing claim. The Court disagrees with defendant's assertion that paragraph 6 of plaintiff Valladon's declaration, which describes the terms of collective-bargaining agreements reached during the time Valladon was president of the Oakland Police Officers' Association, amounts to inadmissible hearsay that should not be considered at the summary judgment stage. The statements contained in Valladon's declaration are matters within his personal knowledge; moreover, even if they were hearsay, they could likely be presented in an admissible form at trial, making them appropriate for consideration at the summary judgment stage. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004). The Court therefore DENIES defendant's objection regarding the Valladon declaration. The newspaper article to which defendant objects on grounds of relevance and hearsay was not material to the Court's disposition of the motion. The Court therefore DENIES this objection without prejudice to reconsideration at trial. (Docket No. 174).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART plaintiff's motion for partial summary judgment on the classwide rate of pay claim, and DENIES the other motions. (Docket Nos. 165, 168, 345, 180).

**IT IS SO ORDERED.**

Dated: October 20, 2009

SUSAN ILLSTON
United States District Judge

19